UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF TENNESSEE
AT CHATTANOOGA

|  |  |  |
|---|---|---|
| CARY PARADIS, | ) | |
| | ) | |
| Petitioner, | ) | |
| | ) | |
| v. | ) | No. 1:05-CR-34 / 1:09-CV-177 |
| | ) | Chief Judge Curtis L. Collier |
| UNITED STATES OF AMERICA, | ) | |
| | ) | |
| Respondent. | ) | |
| | ) | |

**M E M O R A N D U M**

*Pro se* petitioner Cary Paradis ("Petitioner") filed a motion to vacate, set aside, or correct

sentence pursuant to 28 U.S.C. § 2255 (Court File No. 30). Pursuant to the Court's Order (Court

File No. 32), the United States filed a response (Court File No. 35). Petitioner replied (Court File

No. 37). This Court initially sentenced Petitioner to 188 months imprisonment on December 21,

2006, after he pleaded guilty to two counts of knowingly and intentionally attempting to

manufacture methamphetamine, in violation of 21 U.S.C. §§ 841(b)(1)(C) & 846. Judgment was

entered on January 23, 2007, and Petitioner's conviction and sentence were affirmed on direct

appeal on August 12, 2008. *United States v. Paradis*, 289 F. App'x 66 (6th Cir. 2008). Following

a denial of *certiorari* by the United States Supreme Court, Petitioner timely filed his § 2255 motion

on June 30, 2009 (Court File No. 30).

Petitioner chief claim is ineffective assistance of counsel at sentencing. Petitioner cites his

attorney's (1) failure to call Heather Everhart as a witness at the sentencing hearing; (2) failure to

obtain records from the child care center attended by Meagan Everhart, a minor whose presence at

the scene of Petitioner's methamphetamine lab cost Petitioner a six-level sentencing enhancement;

(3) failure to permit Petitioner to testify at sentencing; (4) failure to investigate and properly cross-examine Detective Hill; (5) failure to properly prepare witness Susan Michaud or error in calling her as a witness; (6) failure to object to the drug quantity used to determine Petitioner's base offense level; and (7) failure to object to the sentence imposed as violative of *United States v. Booker*, 543 U.S. 220 (2005). All but the last two of these alleged defects implicate the Court's application of the six-level enhancement for putting a minor's life at substantial risk of harm. Additionally, Petitioner claims ineffective assistance of counsel on direct appeal.

The Court finds the materials thus submitted, together with the record of the underlying criminal case (1:05-CR-34), conclusively show Petitioner is not entitled to relief on any of the claims asserted in his petition. Accordingly, the Court will decide this matter without an evidentiary hearing, *see United States v. Todaro*, 982 F.2d 1025, 1028 (6th Cir. 1993), and will **DENY** Petitioner's motion for the reasons stated herein.

I.      **RELEVANT FACTS AND PROCEDURAL HISTORY**

The underlying facts and supporting Petitioner's conviction are taken from the summary provided in the Sixth Circuit's opinion affirming Petitioner's conviction:

> Paradis admitted the following facts in his plea agreement: On October 30, 2003, a sheriff's deputy pulled him over, found him without a driver's license, and, searching him incident to arrest, spotted twenty-seven grams of methamphetamine. With Paradis's consent, law enforcement then searched his home and found Paradis's girlfriend, Heather; her three-year-old daughter, Meagan; and a meth lab. Officers arrested Heather for child endangerment, and Paradis admitted that he had taken a "substantial step" toward manufacturing meth. Results of this search supported the first count in Paradis's bargained plea; the second count came about from a later meth bust.

*Paradis*, 289 F. App'x at 67.

Using the 2005 Guidelines, Petitioner's Presentence Report ("PSR") determined the drug quantity Petitioner was accountable for corresponded to a base offense level of 32. Application of a three-level acceptance of responsibility reduction, and a six-level enhancement for "substantial risk of harm to the life of a minor," *see* USSG. § 2D1.1(b)(6)(C)[1] – yielded an adjusted offense level of 35. At sentencing, Petitioner objected to this enhancement. Two witnesses testified at the hearing: Detective Dwayne Hill for the government, and Petitioner's mother Susan Michaud for Petitioner. Detective Hill described the October 30, 2003 search of Petitioner's residence, including finding three-year-old Meagan Everhart present at the scene, and finding an operational methamphetamine lab in the house. Ms. Michaud, who owned the home, testified regarding the length of time Petitioner, Meagan, and Heather Everhart – Petitioner's girlfriend and Meagan's mother – had been staying at the house.

Following the witness' testimony, the Court made several findings: the methamphetamine lab was in operation at the time it was found; Meagan and her mother had been living at the house for at least two weeks before the drug "bust;" Petitioner knew Meagan was in the house; and Meagan was subjected to hazardous chemicals associated with methamphetamine manufacture, both through the air (which smelled strongly of chemicals at the time of the bust), and possibly directly. Based on these findings, the Court concluded there was a substantial risk of harm to Meagan created by Petitioner's operation of the methamphetamine lab. Accordingly, the Court applied the six-level enhancement for substantial risk of harm to a minor, over Petitioner's objection. The Court sentenced Petitioner to 188 months incarceration, which was at the bottom of his Guideline range of 188-235 months. Petitioner appealed to the Sixth Circuit, which affirmed the conviction and

---

[1]This provision has since been renumbered as § 2D1.1(b)(13)(D) in the 2011 Guidelines.

sentence, including application of the six-level enhancement.

## II.    STANDARD OF REVIEW

Section 2255 of Title 28 of the United States Code permits a prisoner in custody under

sentence of a federal court to move the court which imposed the sentence to vacate, correct, or set

aside the sentence, on the grounds:

> the sentence was imposed in violation of the Constitution or laws of the United
> States, or that the court was without jurisdiction to impose such sentence, or that the
> sentence was in excess of the maximum authorized by law, or is otherwise subject
> to collateral attack . . . .

28 U.S.C. § 2255.  This Court has jurisdiction under 28 U.S.C. § 1331.  Petitioner has the burden

of establishing any claim asserted in the petition.  *See Bowers v. Battles*, 568 F.2d 1, 5 (6th Cir.

1977); *Mayes v. United States*, 93 F. Supp. 2d 882, 886 (E.D. Tenn. 2000).  It is a "well-settled

principle that to obtain collateral review relief a prisoner must clear a significantly higher hurdle

than would exist on direct appeal." *Fair v. United States*, 157 F.3d 427, 430 (6th Cir. 1998) (citing

*United States v. Frady*, 456 U.S. 152, 166 (1982)).

Where a constitutional error is alleged in order to obtain relief under § 2255, the record must

reflect a constitutional error of such magnitude it had a substantial and injurious effect or influence

on the proceedings.  *See Brecht v. Abrahamson*, 507 U.S. 619, 637 (1993); *Watson v. United States*,

165 F.3d 486, 488 (6th Cir. 1999).  In order to prevail on a § 2255 motion alleging a non-

constitutional error, a petitioner must show a "fundamental defect in the proceedings which

necessarily results in a complete miscarriage of justice or an egregious error violative of due

process." *Gall v. United States*, 21 F.3d 107, 109 (6th Cir. 1994).  Thus, "[a] motion brought under

§ 2255 must allege one of three bases as a threshold standard: (1) an error of constitutional

4

magnitude; (2) a sentence imposed outside the statutory limits; or (3) an error of fact or law that was

so fundamental as to render the entire proceeding invalid." *Weinberger v. United States*, 268 F.3d

346, 351 (6th Cir. 2001).

## III.   DISCUSSION

Petitioner's § 2255 motion asserts two grounds for relief: ineffective assistance of counsel

at sentencing, and ineffective assistance of counsel on appeal.

### A.  Ineffective Assistance of Counsel at Sentencing

The Sixth Amendment provides, in pertinent part, "[i]n all criminal prosecutions, the accused

shall enjoy the right . . . to have the Assistance of Counsel for his defense."  A defendant has a Sixth

Amendment right not just to counsel, but to "reasonably effective assistance" of counsel.  *Strickland*

*v. Washington*, 466 U.S. 668, 687 (1984).  In *Strickland*, the Supreme Court set forth a two-pronged

test for evaluating claims of ineffective assistance of counsel:

> First, the defendant must show that counsel's performance was deficient.  This requires showing that counsel made errors so serious that counsel was not functioning as the "counsel" guaranteed the defendant by the Sixth Amendment. Second, the defendant must show that the deficient performance prejudiced the defense.  This requires showing that counsel's errors were so serious as to deprive the defendant of a fair trial, a trial whose result is reliable.  Unless a defendant makes both showings, it cannot be said that the conviction  . . . resulted from a breakdown in the adversary process that renders the result unreliable.

466 U.S. at 687.

In considering the first prong of the test set forth in *Strickland*, the appropriate measure of

attorney performance is "reasonableness under prevailing professional norms."  *Id.* at 688.  A

defendant asserting a claim of ineffective assistance of counsel must "identify the acts or omissions

of counsel that are alleged not to have been the result of reasonable professional judgment."  *Id.* at

690. The evaluation of the objective reasonableness of counsel's performance must be made "from counsel's perspective at the time of the alleged error and in light of all the circumstances, and the standard of review is highly deferential." *Kimmelman v. Morrison*, 477 U.S. 365, 381 (1986).

The second prong of the *Strickland* test requires the petitioner to show counsel's deficient performance prejudiced the defense. Thus, "[a]n error by counsel, even if professionally unreasonable, does not warrant setting aside the judgment of a criminal proceeding if the error had no effect on the judgment." *Strickland*, 466 U.S. at 691. The petitioner must show "there is a reasonable probability that, but for counsel's unprofessional errors, the result of the proceeding would have been different." *Id.* at 694. The *Strickland* Court emphasized both prongs must be established in order to meet the claimant's burden, and if either prong is not satisfied the claim must be rejected, stating:

> Although we have discussed the performance component of an ineffectiveness claim prior to the prejudice component, there is no reason for a court deciding an ineffective assistance claim to approach the inquiry in the same order or even to address both components of the inquiry if the defendant makes an insufficient showing on one. . . . If it is easier to dispose of an ineffectiveness claim on the ground of lack of sufficient prejudice, which we expect will often be so, that course should be followed. Courts should strive to ensure that ineffectiveness claims not become so burdensome to defense counsel that the entire criminal justice system suffers as a result.

*Id.* at 697.

Petitioner alleges seven failures by counsel at sentencing, five of which pertain to the grounds for the six-level enhancement for putting Meagan at substantial risk of harm. The Court will discuss these five issues together, before going on to discuss the final two separately.

### 1. Errors Pertaining to the Six-Level Enhancement

The bulk of Petitioner's § 2255 motion concerns alleged errors by counsel at sentencing,

without which, he contends, the Court would not have applied the six-level enhancement. Specifically, Petitioner claims counsel was ineffective for : (1) failing to call Heather Everhart as a witness at the sentencing hearing; (2) failing to obtain records from the child care center attended by Meagan Everhart; (3) failing to permit Petitioner to testify at sentencing; (4) failing to investigate and properly cross-examine Detective Hill; and (5) failing to properly prepare witness Susan Michaud, or for calling her as a witness at all.

Regarding the first, Petitioner claims had counsel investigated and called Ms. Everhart, she would have testified her daughter Meagan was in a day care center for most of the day of October 30, 2003 – the date police discovered Petitioner's methamphetamine lab. Additionally, Petitioner asserts Ms. Everhart would have testified generally that Meagan was never placed at substantial risk of harm. Similarly, in his second claim of error, Petitioner asserts subpoenaed records from Meagan's child care center would have corroborated Ms. Everhart's testimony that Meagan was at day care for most of the day on October 30, 2003.

Both of these claims of error have the same flaw: the faulty premise that the six-level enhancement for putting Meagan's life at substantial risk of harm turned on the Court's belief she was present at the house during the day of October 30, 2003, perhaps while a methamphetamine "cook" was occurring. This is incorrect. As the Court explained at sentencing, and as the Sixth Circuit explained in upholding the six-level enhancement, the risk of harm was found not in Meagan's supposed all-day presence at the house on the day the drug bust,[2] but in the fact that "a three-year old child slept in a house for not insubstantial periods of time mere feet from where

_____

[2]Though she undisputedly *was* at the house at the time of the bust, at which time the house smelled strongly of methamphetamine-related chemicals, even if she was not at the house all day long.

Paradis admits he operated a meth lab." *Paradis*, 289 F. App'x at 70.  It is therefore immaterial

whether Meagan was at day care for most of the day of October 30, 2003.  The fact, if true, would

have no bearing upon this Court's – or the Sixth Circuit's  – determination the six-level

enhancement for putting Meagan's life at substantial risk of harm applies.  It is axiomatic counsel

was not ineffective for failing to put on evidence immaterial to the application of the six-level

enhancement Petitioner challenges.  The Court thus rejects Petitioner's first two claims of error.

In his third claim of error, Petitioner alleges counsel was ineffective by allegedly failing to

permit him to testify at sentencing.  According to Petitioner, during the course of sentencing he told

his attorney he wanted to testify, a request his attorney "refused."  Petitioner avers he would have

testified to the following had counsel not prevented him:

> (a)  that when he was stopped by law enforcement, he provided truthful information
> regarding his drug activities,
> (b) that he told law enforcement where he lived,
> (c) that he never told the officer that a child was at the house,
> (d) that on October 30, 2003, he and Heather dropped the minor child off at the day
> care center, specifically, the Childcare Network, located at 4700 Bonny Oaks Dr.,
> Chattanooga, Tennessee.  and
> (e) that he installed protective devices, such as 4-foot ceiling fans, locks on inside
> doors, container(s) to catch all fumes and window fans.

(Court File No. 31, p. 12).

Petitioner does not explain how the above five topics of testimony would have affected the

Court's application of the six-level enhancement for putting Meagan at risk.  Items (a) through (c)

are wholly irrelevant to the six-level enhancement.  Item (d) is immaterial for reasons already

discussed, namely, the Court did not apply the enhancement because it believed Meagan was at the

house all day on October 30, 2003, but because Petitioner was operating a methamphetamine lab in

the home where Meagan was living; indeed, he was operating the lab mere feet from her bedroom.

With respect to item (e), this Court, and the Sixth Circuit in upholding the enhancement, did not assume Petitioner failed to implement certain safety precautions in his lab. Rather, the Court cited the risk of explosion, fire, or chemical contamination inherent to home methamphetamine labs. This risk was corroborated by the powerful chemical smell permeating the home at the time officers discovered Petitioner's lab, as well as the presence of items such as Coleman fuel, acetone, lye, antifreeze, red phosphorus, and muriatic acid within feet of Meagan's bedroom. In short, none of the above suggested topics of testimony would conceivably undercut the Court's rationale for applying the six-level enhancement, thus Petitioner cannot show prejudice from his alleged inability to testify.

Moreover, Petitioner did, in fact, have the opportunity to address the Court at his sentencing. During his allocution, Petitioner expressed acceptance of responsibility, disavowed telling an officer Meagan was at the home, and explained he had no intent to harm her. Thus, in his allocution Petitioner covered some of the ground he claims he would have covered if he had taken the stand. Additionally, nothing prevented Petitioner from saying even more in his allocution, or even from telling the Court he wished to be sworn, take the stand, and testify subject to cross-examination. It is well-settled that, "[b]arring any statements or actions from the defendant indicating disagreement with counsel or the desire to testify, the trial court is neither required to sua sponte address a silent defendant and inquire whether the defendant knowingly and intentionally waived the right to testify, nor ensure that the defendant has waived the right on the record. . . . When a defendant does not alert the trial court of a disagreement, waiver of the right to testify may be inferred from the defendant's conduct. Waiver is presumed from the defendant's failure to testify or notify the trial court of the desire to do so." *United States v. Webber*, 208 F.3d 545, 551 (6th Cir. 2000) (quotation omitted).

If Petitioner wished to testify, he "c[ould have] reject[ed] defense counsel's advice to the contrary by insisting on testifying, *communicating] with the trial court*, or discharging counsel." *Id.* (emphasis added).  Because he gave no indication he wished to testify or that counsel was acting contrary to Petitioner's instructions by failing to call him as a witness, the Court presumes Petitioner to have waived his right to testify.  Given the lack of prejudice as well as Petitioner's presumed waiver, the Court rejects Petitioner's third claim of error.

In his fourth claim of error, Petitioner alleges counsel was ineffective by failing to investigate and properly cross-examine Detective Hill.  He asserts that had counsel done an adequate job cross-examining Detective Hill, it would have established: 1) Petitioner's methamphetamine lab can not be determined to have been unsafe because no lab test was conducted and the agents wore no protective gear; 2) Meagan was not in "danger" because medical reports did not show she was exposed to methamphetamine; 3) Petitioner's methamphetamine lab had adequate safety mechanisms; and 4) technology was adequate to determine whether or not Meagan had come into contact with methamphetamine.

Petitioner gives no reasons, whatsoever, for thinking a more extensive cross-examination of Detective Hill would have established the above facts.  Such unsupported assertions are insufficient to establish *Strickland* prejudice.  Moreover, the record shows Petitioner's counsel conducted a lengthy, rigorous cross-examination of Detective Hill.  This cross-examination was aimed at establishing just the points Petitioner mentions here; namely, that there was no evidence Meagan was exposed to toxic fumes. Petitioner does not identify any specific deficiencies in counsel's cross-examination of Detective Hill, and the Court detects none.

Additionally, as with many of Petitioner's claims of error, Petitioner misapprehends the

basis of the six-level enhancement for substantial risk of harm to a minor. As already explained, the enhancement was not based upon *actual* harm to Meagan, but on *risk* of harm, as the Guidelines prescribe. *See* USSG § 2D1.1(b)(13)(D). While Petitioner may be correct Meagan did not come into physical contact with methamphetamine or suffer other actual harm, the evidence was overwhelming Meagan was at substantial *risk* of harm simply by virtue of her living and sleeping in close proximity to an inherently dangerous home methamphetamine lab. Petitioner has not shown how any amount of cross-examination of Detective Hill could have weakened this conclusion. Accordingly, the Court rejects Petitioner's fourth claim of error.

Finally, Petitioner alleges counsel was ineffective by allegedly failing to properly prepare Susan Michaud to testify, or alternatively, for calling her to testify at all. Petitioner devotes only a few sentences to this claim of error, simply stating broadly that Ms. Michaud's testimony was prejudicial and Petitioner's counsel would not have called her if he had properly investigated her. The record does not support this claim of error. Petitioner's counsel elicited testimony from Ms. Michaud designed to support Petitioner's contention Meagan was not exposed to methamphetamine fumes. In response to Petitioner's counsel's questioning, Ms. Michaud testified Meagan went to day care "every day," and stayed at Ms. Michaud's home only intermittently. Both of these points cut in Petitioner's favor, and the former corroborates Petitioner's continued, albeit irrelevant, contention Meagan went to day care on October 30, 2003. Without Ms. Michaud's testimony, it would nonetheless have been clear from Detective Hill's testimony that Meagan was present at the home when it was full of noxious methamphetamine-related fumes, and that Meagan occupied a room several feet away from Petitioner's methamphetamine lab. Ms. Michaud's testimony served to show some limits to Meagan's risk of exposure to methamphetamine, even if these limits were not

11

ultimately sufficient to preclude application of the six-level enhancement. It was therefore reasonable for counsel to call Ms. Michaud, and Petitioner cannot show he was prejudiced by counsel's decision to call her. Accordingly, the Court rejects this claim of error.

### 2. Failure to Object to Drug Quantity

Petitioner alleges counsel was ineffective for failing to object at sentencing to the drug quantity calculations contained in paragraph 26 of the PSR. Specifically, Petitioner claims pseudoephedrine found in January 2004, which formed the basis for Count Seven of the Indictment, should not have contributed to the quantity calculation because he did not plead guilty to Count Seven. Petitioner's claim is based on a faulty understanding of the law, namely, that one's Guidelines calculation can only take into account drug quantities contained in the counts of conviction. Rather, the Guidelines provide that "quantities and types of drugs not specified in the count of conviction are to be included in determining the offense level if they were part of the same course of conduct or part of a common scheme or plan as the count of conviction." USSG. § 1B1.3, background note; *United States v. Easley*, 306 F. App'x 993, 995-96 (6th Cir. 2009) ("Prior drug transactions [are part of the same course of conduct] if they are substantially connected to the offense of conviction by at least one common factor, such as . . . common purpose, or similar modus operandi, or if they are part of a[n] . . . ongoing series of offenses") (quotations omitted). Here, it is uncontested Petitioner's attempted manufacture of methamphetamine in January 2004 was part of the same ongoing series of attempts to manufacture methamphetamine as the attempts he pleaded guilty to in the two counts of conviction. Thus, the pseudoephedrine found in January 2004 properly contributed to Petitioner's drug quantity calculations, and counsel was not deficient for failing to raise Petitioner's meritless objection.

**3. Failure to object to sentence as violative of *Booker*.**

In his last claim of error pertaining to sentencing, Petitioner asserts his counsel was ineffective for failing to object to the six-level enhancement as violative of *Booker*. As with the last claim of error, this one too rests on a faulty understanding of the law. Petitioner contends *Booker* precludes the application of sentencing enhancements based on facts not admitted or found by a jury. In fact, "this court [i.e. the Sixth Circuit] and others have repeatedly held since *Booker* that district judges can find the facts necessary to calculate the appropriate Guidelines range using the same preponderance-of-the-evidence standard that governed prior to *Booker*." *United States v. Roberge*, 565 F.3d 1005, 1012 (6th Cir. 2009) (quotation omitted). Thus, the Court's finding of the facts necessary to support the six-level enhancement did not run afoul of *Booker*. Because counsel was not ineffective for failing to raise a baseless objection to the six-level enhancement, the Court rejects this claim of error.

**B. Ineffective Assistance of Counsel on Direct Appeal**

Petitioner claims his appellate counsel was ineffective for failing to challenge this Court's application of the six-level enhancement as violative of *Booker*. For the reasons explained above, Petitioner's belief that *Booker* forbids judicial calculation of Guidelines enhancements based on facts not admitted is legally erroneous. Accordingly, appellate counsel was not ineffective for failing to raise this claim.

**IV.    CONCLUSION**

None of the grounds asserted by Petitioner support a finding his counsel's assistance was ineffective, either at sentencing or on direct appeal. For the reasons stated above, Petitioner's

sentence was not imposed in violation of the Constitution or laws of the United States or is it otherwise subject to collateral attack, and the motion to vacate, set aside, or correct his sentence pursuant to 28 U.S.C. § 2255 will therefore be **DENIED** (Court File No. 30).  Additionally, the Court will **DENY** as untimely Petitioner's motion to amend the § 2255, filed over two years after the filing of the § 2255 (Court File No. 40).

In addition to the above, this Court **CERTIFIES** any appeal from this action would not be taken in good faith and would be totally frivolous.  Therefore, any application by Petitioner for leave to proceed *in forma pauperis* on appeal is **DENIED**.  Fed. R. App. P. 24.  Petitioner has failed to make a substantial showing of the denial of a constitutional right, *see* 28 U.S.C. § 2253; Fed. R. App. P. 22(b), or reasonable jurists would disagree on the resolution of this matter, thus a certificate of appealability **SHALL NOT ISSUE**.  *Slack v. McDaniel*, 529 U.S. 473, 484-85 (2000).


**An Order shall enter.**



**/s/**
**CURTIS L. COLLIER**
**CHIEF UNITED STATES DISTRICT JUDGE**